17-2083-cv
MFW v. Plausteiner

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand eighteen.

PRESENT:   ROBERT D. SACK,
           PETER W. HALL,
           CHRISTOPHER F. DRONEY,

                            *Circuit Judges.*
-----------------------------------------------------------------------
MFW ASSOCIATES, LLC,

                 *Plaintiff-Counter-Defendant-Appellant*,

                 v.                                          No. 17-2083-cv

STEVEN PLAUSTEINER, SUSAN PLAUSTEINER,

                 *Defendants-Counter-Claimants-Appellees.*

-----------------------------------------------------------------------
FOR APPELLANT:              Steven E. Mellen, Winget, Spadafora & Schwartzberg, LLP, New York, New York.

FOR APPELLEE:               Carolyn K. Cole, Cole Assoc., Lebanon, NH, and Kimberly C. Lau, Warshaw Burstein, LLP, New York, New York (*on the brief*).

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-Counter-Defendant-Appellant MFW Associates LLC ("MFW") brought the instant action against Defendants-Counter-Plaintiffs-Appellees Steven and Susan Plausteiner ("the Plausteiners"), alleging breach of contract. The district court entered summary judgment in favor of the Plausteiners, finding MFW's claim to be barred by *res judicata*. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

I.    Background.

The Plausteiners are former majority owners of Snowdance LLC, a company that owned and operated Ascutney Mountain Resort in Vermont ("the Resort") for roughly two decades ("the Company"). In May 2005, the Company borrowed $4,500,000 from the Palisades Regional Investment Fund ("PRIF"). The Company defaulted on that loan and PRIF agreed to two separate forbearance agreements. After the Company defaulted on the second forbearance agreement, Steven Plausteiner met with Dan Purjes ("Purjes"), a then-minority investor in the Company, to discuss ways to pay off the PRIF loan, which at that time was about $2,350,000 but had been negotiated down to $1,850,000 on the condition it was paid off immediately in cash. The two men struck a deal: the Plausteiners would pay $1,000,000 to PRIF in exchange for a preferred membership interest in the Company of $1,000,000, which would be senior to all other equity interests in the Company; and Purjes would establish MFW,

2

which would purchase the balance of the loan from PRIF and take PRIF's place as first priority lien holder on the Resort's real property and take a senior preferred equity position in the Company. MFW would also release the Plausteiner's personal home from the security for the loan.

Purjes thus established MFW in October 2008. MFW purchased the balance of the loan from PRIF allowing it to stand in PRIF's shoes with respect to the loan and the current forbearance agreement. Also in October 2008, the Plausteiners paid the agreed-upon $1,000,000 to PRIF.

On October 10, 2008, the parties entered into a new forbearance agreement, which is the contract MFW here alleges the Plausteiners breached. The "Amendment No. 1 to the Forbearance Agreement dated June 30, 2008" ("AFA") provided that "Debtor shall pay"[1] to MFW by October 1, 2009 $850,000, plus 20% interest, plus reasonable fees, costs, and expenses incurred by MFW as a result of enforcement. But in the event Debtor did not so pay, the entire outstanding debt would become due and payable immediately. The AFA also dictated that Debtor shall execute and deliver to MFW Limited Liability Membership Pledge Agreements ("the Pledge Agreements"), pledging all of the limited liability common interests owned by each guarantor in the Company.

The Company then defaulted on the loan acquired by MFW, and MFW reinstituted the foreclosure proceedings previously brought by PRIF. The Plausteiners were not named personally in PRIF's original or MFW's reinstituted complaints until January 25, 2010, when MFW filed a supplemental complaint naming as Defendants (a) the Company, (b) three entities

[1] The AFA defined "Debtor" to include the Plausteiners.

3

owned by the Plausteiners that held interests in the Company and had guaranteed the PRIF loan, (c) both Plausteiners, and (d) other holders of Company debt ("the Supplemental Complaint"). App'x at 115 – 23. Count I of the Supplemental Complaint sued for breach of the AFA:

> 24. By failing to pay when due, [the Company] is in breach of [the AFA] and the Forbearance Agreement.
> 25. By failing to pay when due, Guarantors are in breach of their Pledge Agreements.
> 26. As a result of the breaches, [MFW] has suffered damages. Moreover, [MFW] is now entitled to foreclose on the property described in the [Pledge Agreements].

App'x at 119. Count II sought Foreclosure and Count III a deficiency judgment. MFW sought, in part, compensatory damages.

On July 27, 2010, Judge Cohen of the Vermont Superior Court approved a "Stipulated Order Approving Plaintiff's Sale of [the Company] Membership Interests," a corrected version of which was filed on October 8, 2010. App'x at 122. That stipulation permitted the private sale of both Plausteiners and their three entities' ownership interests in the Company to a separate entity, UTVT Holdings, for the nominal fee of $100. The Company then made a motion for approval of the sale of a chairlift. MFW assented to the sale on the same day the motion was filed. The Plausteiners opposed the sale of the chairlift, arguing that the lift was in fact worth much more than the Company was trying to sell it for and that the sale would unnecessarily render the operation of the Resort unviable.

On February 15, 2011, MFW, the Company, the three aforementioned Plausteiner-owned entities, and the Plausteiners entered a Joint Stipulation Regarding Motion to Sell Lift and Motion for Preliminary Injunction ("the Joint Stipulation"). Per the Joint Stipulation the

4

Plausteiners would consent to the sale of the chairlift, *and that the Supplemental Complaint would "be dismissed with prejudice."* App'x at 131 (emphasis added). On March 21, 2011, the motion to allow the sale of the ski lift was granted "[b]ased on all parties' agreement in [the] written stipulation, in accordance with the terms of that stipulation." App'x at 133.

On April 2, 2015, MFW filed the present action against the Plausteiners, on the basis of diversity jurisdiction, in the United States District Court for the Southern District of New York. MFW's complaint brought one claim, for breach of contract, alleging that the Plausteiners breached the AFA by failing to pay MFW $850,000 on or before October 1, 2009, or $1,350,000 after October 1, 2009. MFW sought to recover the unpaid principal balance of the PRIF loan, plus interest and enforcement costs.

II.      Discussion.

"We review a district court's grant of summary judgment *de novo* . . . . Summary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." *Garcia v. Hartford Police Dep't,* 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam) (alterations, citations, and internal quotation marks omitted).

We also "review *de novo* the district court's application of the principles of *res judicata.*" *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.,* 400 F.3d 139, 141 (2d Cir. 2005) (per curiam)).

Where a federal court considers the preclusive effect of a state court judgment, the inquiry is governed by "the preclusion law of the State in which judgment was rendered." *Marrese v.*

5

*Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985); *accord Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192 – 93 (2d Cir. 2008). Under Vermont law, "a final judgment in [a] previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical. The doctrine [of *res judicata*] bars parties from relitigating not only those claims and issues that were previously litigated, but also those that *could* have been litigated in a prior action." *Nat. Res. Bd. Land Use Panel v. Dorr*, 113 A.3d 400, 403 (Vt. 2015) (internal quotation marks and citations omitted) (emphasis added).

The Vermont Supreme Court has recognized that "'[d]efinitions of what constitutes the 'same cause of action' have not remained static over time.'" *Faulkner v. Caledonia Cty. Fair Ass'n.*, 869 A.2d 103, 108 (Vt. 2004) (quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983)) (alteration in original). The modern trend, recognized in Vermont, requires "a plaintiff to address in one lawsuit all injuries emanating from 'all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id.* at 108 – 09 (quoting Restatement (Second) of Judgments § 24(1) (1982)). The "scope of a 'transaction' is determined by 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation . . . where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction.'" *Id.* at 109 (quoting Restatement (Second) of Judgments §§ 24(2), 24 cmt. c.).

The general rule is that "foreclosure actions and deficiency actions are separate and distinct proceedings . . . [a] foreclosure proceeding is solely an action *quasi in rem* and the relief granted is only against the land itself [and thus a] foreclosure judgment is *res judicata* as to the amount

6

of the unpaid debt secured by the mortgage, but is not *res judicata* as to the defendant's liability for any deficiency." *LaFarr v. Scribner*, 549 A.2d 651, 652 – 53 (Vt. 1988) (internal quotation marks and citations omitted). But under Vermont law, an action that seeks not only to foreclose on the property but also to impose personal liability on the debtor has *res judicata* effect in future actions concerning the debtor's personal liability. *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 811 A.2d 655, 658 (Vt. 2002).

The final judgment (Joint Stipulation)[2] dismissing the supplemental complaint in the Vermont foreclosure action bars the litigation pursued in this case. Each involves the Plausteiners and MFW; each concerns the Plausteiner's failure to pay when due under the AFA; each concerns the same breach of contract. Because "the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical," this action is barred by the principle of *res judicata*. *Dorr*, 113 A.3d at 403 (internal quotation marks omitted).

III.    Conclusion.

We have considered all MFW's arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

---

[2]    Under Vermont law, dismissal with prejudice is a final judgment such that it satisfies the first element of *res judicata*. *City of Barre v. Town of Orange*, 430 A.2d 444, 446 (Vt. 1981).